UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

'05 CIV 2256

WILLIAM CAPUTO,

                           Docket No.:

                Plaintiff,         **COMPLAINT**

   - against -

SNAPPLE DISTRIBUTORS, INC., SNAPPLE FINANCE
CORP., SNAPPLE BEVERAGE CORP., SNAPPLE
BEVERAGE GROUP, INC.

               Defendants.
-----------------------------------------------------------------X

    Plaintiff, William Caputo, by his attorneys, The Vincent A. DeIorio Law Firm, complaining of Defendants upon information and belief, respectfully allege:

## NATURE OF ACTION

    1. This action is brought by Plaintiff, William Caputo, against Defendants, for Price Discrimination, in violation of 15 U.S.C. §13 et seq. (the "Robinson-Patman Act"), breach of contract, and breach of implied duty of good faith and fair dealing.

## JURISDICTION AND VENUE

    2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 since this action asserts Price Discrimination, in violation of the Robinson Patman Act, 15 U.S.C. §13 et seq.

    3. This Court has jurisdiction over this matter pursuant to 15 U.S.C. §15 and 28 U.S.C. §1332(a), by reason of diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

1

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391.

## PARTIES

5. That at all times relevant and hereinafter mentioned, Plaintiff, William Caputo, is a Snapple Area Route Distributor, (hereinafter "Distributor and/or "Caputo") with a principal residence of 45 Kobb Blvd., West Islip., New York 11795.

6. That at all times relevant and hereinafter mentioned, Defendant Snapple Distributors, Inc. (hereinafter "Snapple") was and is a foreign corporation incorporated under the laws of the State of Delaware and is licensed and authorized to do business in New York State, with its principal place of business located at 709 Westchester Avenue, White Plains, New York.

7. That at all times relevant and hereinafter mentioned, Defendant, Snapple Finance Corp. (hereinafter "Snapple") was and still is a foreign corporation, incorporated under the laws of the State of Delaware, licensed and authorized to do business in New York State with its principal place of business located at 709 Westchester Avenue, White Plains, New York.

8. That at all times relevant and hereinafter mentioned, Defendant, Snapple Beverage Corp. (hereinafter "Snapple") was and still is a foreign corporation, incorporated under the laws of the State of Delaware, licensed and authorized to do business in New York State, with its principal place of business located at 709 Westchester Avenue, White Plains, New York.

9. That at all times relevant and hereinafter mentioned, Defendant, Snapple Beverage Group, Inc. (hereinafter "Snapple") was and still is a foreign corporation, incorporated under the laws of the State of Delaware, licensed and authorized to do business in New York State with its principal place of business located at 709 Westchester Avenue, White Plains, New York.

10. That at all times relevant and hereinafter mentioned all four above named defendants are jointly and severally related, affiliated and interrelated entities and individually, jointly and severally referred to as "Snapple" as responsible to Plaintiff in the Causes of Action herein pleaded.

## AS AND FOR A FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

11. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "10" of the Complaint, as though fully set forth herein.

12. Plaintiff, for good and valuable consideration, acquired and entered into an Area Route Distributor agreement with Snapple to market, sell and deliver Snapple products, to various outlets within a designated and exclusive territory (hereinafter "Route").

13. Plaintiff acquired and/or purchased his exclusive area route for significant consideration, and purchased, maintained and serviced delivery truck and related equipment and investment, in order to fulfill his contractual agreement with Snapple under said Route agreement, all in reliance upon the contractual obligations and responsibilities of Snapple as therein expressed and thereafter conducted.

14. Plaintiff financed the purchase of the exclusive route, delivery truck and related equipment, all of which was entered into in reliance upon said Agreements and the inducing obligations of Snapple as therein expressed and thereafter conducted.

15. Snapple has required that Distributors sign financing statements (i.e. UCC-1), as collateral for the purchase of the exclusive area Routes, which covered the Distributors accounts, accounts receivable, all equipment, and beverage delivery trucks.

16. Snapple and their attorneys prepared all Area Route Distributor Agreements, which among other things, required that Distributors including Mr. Caputo market and sell Snapple

3

products only, and prohibited them from carrying or selling any other products or brands of any kind.

17. Snapple also mandated that Plaintiff increase his sales of cases of Snapple by (10%) in each succeeding year of the contract agreement and increase his active account base by ten (10%) percent each year during the term of the contract agreement.

18. Said Agreement further provides that Plaintiff was and is prohibited from selling more than 80,000 cases of Snapple products per year, unless he purchases and operates a second delivery truck and further that Plaintiff is permitted to sell up to 110,000 cases per year on the express condition that he employ an additional designated salesman "to engage in pre-selling activity" for a minimum of five days per week.

19. Plaintiff has duly complied with and fulfilled the material terms and conditions of the Area Route Distributor Agreement on the respective parts to be performed.

20. In due performance of said Agreement, Plaintiff marketed, sold, and delivered Snapple products to retail outlets, within his exclusive Route area, some of which include but are not limited to, stores, restaurants, pizzerias, delicatessens, schools, courthouses, police stations, firehouses, parks and municipal buildings, and has contractual relationships with said retail outlets.

21. Plaintiff was also required to and did register his customers and accounts with Snapple, pursuant to the Route Distributor Agreement, thereby giving and affording Snapple full and complete knowledge of his customers' names, accounts, the number of cases sold and the location of said customers and accounts.

22. That prior to and from at least 1999 to the present time, Snapple and Transshippers (defined below), directly or through their respective agents, entered into improper, inappropriate and unlawful relationships, and Snapple knowingly assisted and permitted

4

Transhippers to sell Snapple Products, in direct contravention of the language, spirit and intent of the Area Route Distributor Agreement. Transshippers are entities that do not own Snapple Distributorships and never entered into Area Route Distributor Agreements, but who sell Snapple Products within a Distributor's exclusive territory. Unlike Plaintiff, the Transshippers were permitted by Snapple to market, sell, deliver and distribute Snapple products, <u>in any territory or location</u> without restriction, and <u>at any price</u> per case. Unlike Plaintiff, the Transshippers <u>did not pay</u> any consideration whatsoever to be a "distributor" of Snapple products. Furthermore, the Transshippers were not required to agree to and comply with the Distributors' restrictions and requirements mandated by Snapple, as contained in the Area Route Distributor Agreements, including but not limited to, delivery truck and equipment requirements, sales quotas, and the prohibition against selling other brands.

23. That prior to and from at least 1999 to the present time, Transshippers marketed, sold and delivered Snapple products within Plaintiff's exclusive territory and area route.

24. That prior to and from at least 1999 to the present time, Transshippers marketed, sold and delivered Snapple products to Plaintiff's customers and accounts.

25. That prior to and from at least 1999 to the present time, Snapple had full and complete knowledge that the Transshippers were marketing, selling and delivering its products in the Plaintiff's exclusive territory and area route.

26. That prior to and from at least 1999 to the present time, Snapple had full and complete knowledge that the Transshippers were marketing, selling and delivering its products to Plaintiff's customers and accounts.

27. That prior to and from at least 1999 to the present time, Snapple took no direct action whatsoever to stop, cease, prohibit or prevent the Transshippers from marketing, selling and delivering its products in Plaintiff's exclusive territory and area route.

5

28. That prior to and from at least 1999 to the present time, Snapple took no direct action whatsoever to stop, cease, prohibit and prevent the Transshippers from marketing, selling and delivering its products to Plaintiff's customers and accounts.

29. That prior to and from at least 1999 to the present time, Snapple significantly profited from willfully, intentionally and purposefully ignoring Plaintiff's valid complaints and concerns that the Transshippers were marketing, selling and delivering Snapple products within Plaintiff's exclusive territory and area route and marketing, selling and delivering Snapple products to Plaintiff's customers and accounts.

30. That prior to and from at least 1999 to the present time, the Transshippers significantly profited from willfully, intentionally and purposefully marketing, selling and delivering Snapple products within Plaintiff's exclusive territory and area route and marketing, selling and delivering Snapple products to Plaintiff's customers and accounts.

31. That prior to and from 1999 to the present time, Snapple has willfully, intentionally and purposefully sold its products to the Transshippers, directly or through its respective agent, at such a preferential, discriminatory, discounted, decreased and deflated price, in a calculated attempt to destroy and decimate Plaintiff's ability to market, sell and distribute Snapple products in his exclusive territory and area route and to existing customers and accounts, and to destroy and decimate the value of Plaintiff's distributorship and investment.

32. Defendants conduct is a well designed and intentional breach of the letter and intent of said Area Route Agreement; has already resulted in irreparable harm and will continue to do so; i.e. Plaintiff has already lost actual profits from the lost sales of Snapple products; will lose potential profits from the loss of its current customers and accounts usurped by the Transshippers; and will lose potential profits from lost sales of new Snapple products to new customers and locations within his respective territory.

33. A Distributor, who does not meet Snapple's sales quotas, from the loss of these customers and accounts, is exposed to and now at risk of losing his exclusive area route and those who lose significant sales, may be forced into default on their financing may and lose their exclusive area route and their investment in same.

34. Plaintiff will also be irreparably harmed by the decrease in the value of his respective distributorship, since the market value of each distributorship route is based upon the Distributor's respective annual sales of Snapple cases, the reduction of which materially and adversely impacts upon and reduces the value of the distributorship route and their investment.

35. A declaratory judgment with respect to the question of law herein involved will settle directly, expeditiously and with finality, the controversy concerning whether Snapple, directly or through its agents must cease and desist from marketing and selling its products to Transshippers, and its respective agents, who are marketing, selling, delivering and distributing Snapple products in Plaintiff's exclusive territory and area route to Plaintiff's existing customers and accounts.

36. By reason of the foregoing, Plaintiff has suffered and will continue to suffer irreparable damage, is without any adequate remedy at law and is entitled to an immediate judicial declaration of his rights under and in accordance with the language, spirit and intent of said Area Route Distributor Agreement and the course, conduct and practice of business developed between him and Snapple in the performance thereof as well as injunctive relief to preserve and protect his said right now and in the future.

## AS AND FOR A SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

37. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "36" of the Complaint, as though fully set forth herein.

38. Plaintiff entered into an Area Route Distributor Agreement with Snapple in which Plaintiff paid significant consideration and agreed to market, sell and deliver Snapple products to retail outlets in an exclusive route area.

39. Pursuant to his agreement, Plaintiff marketed, sold and delivered Snapple products to acquired and thereafter established customer accounts and had contractual relationships with retail accounts.

40. Pursuant to his agreement, Plaintiff registered his customer accounts and submitted invoices and other related documents to Snapple.

41. Snapple had full and complete knowledge that Plaintiff had these customers' accounts and long standing contractual relationships with these accounts.

42. Snapple, directly or through its agents knowingly and purposefully assisted, cooperated and conspired with Transshippers and or their agents, who were marketing, selling and distributing Snapple products, without any restrictions whatsoever, within the Plaintiff's exclusive territory and area route to sell Snapple products to retail outlets. The Transhhippers were not required to agree to and comply with the Distributors' restrictions and requirements mandated by Snapple, as contained in the Area Route Distributor Agreement, including but not limited to, delivery truck and equipment requirements, sales quotas, and the prohibition against selling other brands.

43. Snapple, directly or through its agents, knowingly and purposefully assisted, cooperated and conspired with the Transshippers, who directly or through its agents, marketed, sold and distributed Snapple products to Plaintiff's existing and established customers and accounts.

44. Snapple, directly or through its agents, knowingly and purposefully sold and provided its products to Transshippers, directly or through its agents, at a significantly reduced price, greatly below the price offered to Plaintiff. Snapple charged Plaintiff a higher price per case than the Transhippers, despite the fact that the Plaintiff paid a premium to Snapple to own an exclusive territory and route. In fact, the Transhippers, directly or through its agents, were given the reduced price per case, without purchasing an exclusive territory and route and, without agreeing to or complying with the aforementioned "Distributor" restrictions and requirements.

45. Plaintiff complained, protested and repeatedly demanded that Snapple cease and desist from this practice, however, Snapple has ignored said complaints and has refused to stop selling its products to the Transshippers, directly or through its agents, in direct breach and contravention of the Area Route Distributor Agreement.

46. Based upon the foregoing, the Plaintiff has been irreparably harmed, in among other respects, by the loss of actual profits from the lost sales of Snapple products; profits from the loss of its current customers and accounts diverted and usurped by the Transshippers in cooperation and assistance of Snapple; will lose potential profits from the lost sale of new Snapple products and will lose profits from potential sales by Transshippers to other retail outlets within Plaintiff's exclusive area route.

47. A Distributor, who does not meet their sales quota, from the loss of their customers and accounts, are expected to and are now at risk of losing their exclusive area routes and those who lose significant current sales, may default on their financing with the banks, commercial and other lenders and lose their exclusive area route.

48. Plaintiff has been and will be irreparably harmed by the decrease in the value of their respective distributorship, since the market value of each distributorship is based upon the

Distributors' annual sale of Snapple cases, and any reduction in the amount of cases sold will adversely and materially impact upon the value of his distributorship.

49. Based upon the foregoing, Plaintiff has been damaged and is entitled to compensatory damages, punitive damages and attorneys fees in the amount of Two Million Dollars $2,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

50. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "49" of the Complaint, as though fully set forth herein.

51. On or about February 17, 2004, Mitchell Camarda, a Snapple Area Route Distributor commenced a class action proceeding in the United States District Court Southern District against the Snapple Defendants, which asserted in material part, the following causes of action; breach of contract, breach of duty of good faith and fair dealing, and a violation of the Robinson Patman Act. Camarda's Motion for Class Certification was withdrawn without prejudice.

52. Plaintiff Camarda asserted that the Snapple Defendants entered into improper, unlawful and inappropriate relationships with Transshippers, and that Snapple was selling its products to the Transshippers for $2.00 to $3.00 less per case than the products were being sold to Area Route Distributors. Snapple acknowledged, that in the past, it charged different prices for the same Products, to Area Route Distributors and other entities.

53. Plaintiff Camarda further asserted that the Distributors complained to Snapple about the Transshipping, but that Defendants had taken no action to stop and prevent the transshipping. Snapple acknowledged that Distributors had complained to them about the Transshipping.

10

54. Since the Camarda Complaint was filed in February 2004, Snapple Defendants have taken no direct action to stop and prevent future transshipping. Instead, Snapple has engaged in a pattern of malicious conduct in retaliation for the commencement of the Camarda Complaint. Shortly after the Complaint was filed, Snapple reduced Plaintiff's rate of commission earned on the sale of each case of Snapple Product. Snapple's reason for lowering Distributors Commissions was a pretext to retaliate against the Distributors for commencing the Federal lawsuit, and therefore, was a breach of the duty of good faith and fair dealing.

55. Next, in bad faith and with a malicious intent, Snapple approached and thereafter engaged in an improper relationship with an Area Route Distributor to sell Snapple Products to a Transshipper, at a lower price per case, than being offered to Plaintiff, with full and complete knowledge that this Transshipper will be able to sell Snapple Products in Plaintiff's exclusive territory, without restriction.

56. Snapple's improper, unlawful, inappropriate and retaliatory conduct violates the language, spirit and intent of Plaintiff's Area Route Distributor Agreement, and destroys Plaintiff's contractual right to exclusivity of his territory and destroys Plaintiff's ability to compete in the marketplace.

57. Based upon the foregoing, Plaintiff has been damaged and is entitled to compensatory damages in the amount of Two Million Dollars $2,000,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

58. Plaintiff repeats and realleges each and every allegation set forth in Paragraph "1" through "57" of the Complaint, as though fully set forth herein.

59. Plaintiff entered into said Area Route Distributor Agreement with Snapple in and by which Plaintiff agreed to market, sell and deliver Snapple products to retail outlets in an exclusive Route area, the terms and conditions of the agreement, contemplated by the parties at the time, being included in said agreement.

60. At all times mentioned, Snapple owed Plaintiff a duty of good faith and fair dealing concerning the observance of the contemplated terms and conditions of said agreement and the custom and practice between the parties relative to same.

61. At all times mentioned, Snapple was required and expected to exercise the utmost good faith and loyalty in the performance of its duties, in compliance with said agreement.

62. That prior to and from at least 1999 to the present time, while Snapple's Area Route Distributor Agreements were in full force and effect, Snapple and Transhippers, directly or through their respective agents, met, discussed, negotiated, assisted, cooperated and conspired, for Snapple to sell its Products to Transshippers, directly or through their respective agents, at a greatly reduced price, in violation of Snapple's duty of good faith and fair dealing, which was owed to Plaintiff, as Snapple did not consult, discuss or in any way offer the Plaintiff the same prices offered to the Transshippers or its agents. Furthermore, at the same time that the Transhippers and or its agents were given the preferential pricing (i.e. reduced prices per case), Snapple did not require that the Transhhippers agree to and comply with the Plaintiff's restrictions and requirements mandated by Snapple, as contained in Plaintiff's Area Route Distributor Agreement, including but not limited to, delivery truck and equipment requirements, sales quotas, and the prohibition against selling other brands.

63 Subsequently, in violation of Snapple's duty of good faith and fair dealing, Snapple, directly or through its agents, provided its products to Transshippers, directly or through its agents, at greatly reduced prices, and Snapple assisted, cooperated and conspired with the

12

Transshippers to target and continue to target the retail outlets which included the Plaintiff's customers and accounts.

64. In violation of Snapple's duty of good faith and fair dealing, Snapple took no direct action to cease and prevent transshipping despite Plaintiff's repeated complaints.

65. Based upon Snapple's said unilateral, unprovoked, and willful conduct, Plaintiff has been irreparably harmed, in among other respects, as follows: Plaintiff has already lost actual profits from the Transshippers wrongful acquisition of the Plaintiff's customers and accounts, which have been diverted and usurped by the Transshippers with cooperation and assistance of Snapple; and will lose potential profits from the lost sale of new Snapple products.

66. A Distributor, who does not meet his sales quotas, from the loss of customer and accounts is now exposed to and at risk of losing his exclusive route area and upon the loss of significant current sales, may be forced into default on their financing with the banks and commercial lenders and others and may lose their exclusive area route and their investment in same.

67. Plaintiff will be irreparably harmed by the decrease in the market value of his distributorship, since the sales price of each distributorship is based upon the Distributor's annual sale of Snapple cases, and any reduction in the amount of cases sold will materially and adversely impact upon and greatly reduce value of the distributorship route and his investment.

68. Based upon the foregoing, Plaintiff has been damaged and is entitled to compensatory damages, punitive damages and attorneys fees in the amount of Two Million Dollars $2,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF THE ROBINSON PATMAN ACT

69. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs "1" through "68" of the Complaint, as though fully set forth herein.

70. That at all times relevant and hereinafter mentioned, pursuant to Area Route Distributor Agreement, Plaintiff was a purchaser of Snapple products that were purchased and sold for use, consumption and resale within New York State.

71. That at all times relevant and hereinafter mentioned, Snapple, directly or through its agents, sold Snapple beverages and related products to Transshippers, directly or through its agents, and others whom Plaintiff cannot presently identify, which sales were in commerce and were for use, consumption and resale within New York State.

72. That the Snapple beverages and related products sold by Snapple to Plaintiff and to the Transshippers, and others were of like kind and quality.

73. That prior to and from at least 2001 to the present time, the Snapple, directly or through its agents sold Snapple beverages and related products to Transshippers, directly or through its agents and others at significantly lower prices than such were sold to Plaintiff. Snapple has acknowledged that it has sold its Products to others at a lower price than the price offered to Plaintiff.  Snapple also gave Transshippers preferential financial treatment by not requiring that Transshippers comply with the egregious "Distributors" restrictions and requirements, as mandated by the Area Route Distributor Agreements, which reduced the Transshippers overhead and increased their profit.   Plaintiff is in competition with Transshippers in the resale of Snapple beverages and related products.

74. That the effect of Snapple's sale of its beverages and related products to Transshippers at a significantly lesser and discriminatory price, along with Snapple's other preferential

14

financial treatment to the Transshippers, substantially lessens competition, attempts to create a monopoly in the line of commerce, and injures, destroys, and prevents competition between Plaintiff and Transshippers and the customers of each.

75. The discriminatory difference in price charged by Snapple to Plaintiff and the Transshippers is in the range of $2.00 to $3.00 per case of Snapple Beverages. Based upon Snapple's price discrimination and preferential treatment, Snapple has violated and continues to violate 15 U.S.C. section 13 the "Robinson-Patman Act".

76. Furthermore, Transshippers are aware of the aforementioned conduct based upon conversations with the Snapple Defendants and third party retail outlets and thereby have knowingly received Snapple products at a significantly lower price per case than Plaintiff and have received other preferential financial treatment.

77. As a result of Defendants unlawful price discrimination and preferential treatment, Plaintiff has suffered and will continue to suffer further damages, in an amount presently unknown but which Plaintiff will allege by amendment before Trial.

78. Plaintiff complained, protested and repeatedly demanded that Snapple cease and desist from this practice, however, Snapple has ignored said complaints and has refused to stop selling its products to the Transshippers, directly or through its agents.

79. Based upon the foregoing, Plaintiff has been irreparably harmed, in among other respects, by the loss of actual profits from the lost sales of Snapple products; profits from the loss of its current customers and accounts diverted and usurped by the Transshippers in cooperation and assistance of Snapple; will lose potential profits from the lost sale of new Snapple products and will lose profits from potential sales by Transshippers to other retail outlets within Plaintiff's exclusive area route.

80. A Distributor, who does not meet his sales quotas, from the loss of these customers and accounts, are expected to and are now at risk of losing their exclusive area route and upon the loss of significant current sales, the Distributor may default on their financing with the banks, commercial and other lenders and lose their exclusive area route.

81. Plaintiff has been and will be irreparably harmed by the decrease in the value of his respective distributorship, since the market value of his distributorship is based upon the Distributors' annual sale of Snapple cases, and any reduction in the amount of cases sold will adversely and materially impact upon the value of the distributorship.

82. Based upon the foregoing, Plaintiff has been damaged and is entitled to compensatory damages, treble damages, punitive damages and attorney's fees.

**W H E R E F O R E**, Plaintiff respectfully demands judgment herein against Defendants as follows:

a.  On the First Cause of Action; a declaratory judgment finding that Snapple is in breach and violation of said Distributor Agreement and declaring and ordering that Snapple must cease and desist now and in the future from directly or through its agents, marketing, selling, delivering and distributing its products to Transshippers, directly or through its agents, in violation of the Distributor Agreement;

b.  On the Second Cause of Action; $2,000,000.00;

c.  On the Third Cause of Action; $2,000,000.00;

d.  On the Fourth Cause of Action; $2,000,000.00 and a judgment finding that Snapple is in breach and violation of its Duty of Good Faith and Fair Dealing and declaring and ordering; Snapple must cease and desist now and in the future from marketing, selling, delivering and distributing its products to Transshippers, directly or through its agents, in violation of the Distributor Agreement;

  e. On the Fifth Cause of Action; an amount presently unknown but which Plaintiff will allege by amendment before Trial, plus treble damages and attorney's fees;

  f. That Plaintiff also have judgment for reasonable expenses, including, but not limited to, attorneys fees and all expenses incurred in the prosecution of this action;

  g. All together with interest thereon and the costs and disbursements of this action and such other and further relief as this Court may deem just and proper.

Dated: Purchase, New York
   February 17, 2005

Yours, etc.

THE VINCENT A. DeIORIO LAW FIRM

By: _____
  Howard B. Cohen, Esq. (5623)
  *Attorneys for Plaintiff*
  2975 Westchester Avenue, Suite 207
  Purchase, New York 10577
  (914) 696-5555

TO: SNAPPLE DISTRIBUTORS, INC.
   709 Westchester Avenue
   White Plains, New York 10604

   SNAPPLE FINANCE CORP.
   709 Westchester Avenue
   White Plains, New York 10604

   SNAPPLE BEVERAGE CORP.
   709 Westchester Avenue
   White Plains, New York 10604

   SNAPPLE BEVERAGE GROUP, INC.
   709 Westchester Avenue
   White Plains, New York 10604